UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| PTM Technologies, Inc., | ) | |
| | ) | Case No. 10-50980-C-11W |
| Debtor. | ) | |
| | ) | |
| ———————————— | ) | |
| | ) | |
| PTM Technologies, Inc., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Adversary No. 10-06022 |
| | ) | |
| Maxus Capital Group, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| ———————————— | ) | |
| | ) | |
| PTM Technologies, Inc., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Adversary No. 10-06023 |
| | ) | |
| General Electric Capital | ) | |
| Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| ———————————— | ) | |

MEMORANDUM OPINION

These cases came before the Court on May 17, 2011, for hearing on the Motion for Summary Judgment (the "Motion") filed by PTM Technologies, Inc., the Plaintiff in these adversary proceedings and the Debtor in the underlying chapter 11 case, and the Cross-Motions for Summary Judgment ("Cross-Motion") filed by the Defendants.   Charles M. Ivey, IV and Charles M. Ivey, III appeared

on behalf of the Plaintiff.  James C. Lanik appeared on behalf of Defendant Maxus Capital Group, LLC ("Maxus Capital").  Rebecca A. Leigh appeared on behalf of Defendant General Electric Capital Corporation ("GE Capital"). At the hearing, the Court took the Motions under advisement.  For the reasons stated below, the Court will grant the Plaintiff's Motion and deny the Defendants' Cross-Motions.

## JURISDICTION

The court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and Local Rule 83.11 of the United States District Court for the Middle District of North Carolina.  This proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b) which this court may hear and determine.

## UNDISPUTED FACTS

On July 15, 2010, the Plaintiff filed an adversary proceeding against Maxus Capital, seeking to avoid its lien pursuant to 11 U.S.C. § 544(a) on the basis that it was unperfected. That same day, the Plaintiff also filed an adversary proceeding against GE Capital, seeking to avoid its lien on the same basis. The Motion seeks summary judgment on these section 544(a) claims.

PTM Technologies, Inc. is a duly organized corporation and that its jurisdiction of organization is North Carolina, the state in which it was organized.  PTM Technologies, Inc. is the actual

registered name of PTM Technologies, Inc. in the office of the
Secretary of State of North Carolina.

In 2008, PTM Technologies, Inc. sought certain financing from
Maxus Capital, and the parties closed on four separate loans
subject to a master security agreement. These documents granted
Maxus Capital a security interest in the collateral described in
the loan documents. Certain of these loans then were sold and
assigned to GE Capital.

On August 23, 2010, GE Capital filed a proof of claim in the
amount of $5,185,283.35. The documents attached to the proof of
claim include a UCC financing statement that was filed in the North
Carolina Secretary of State's office on May 7, 2008. The financing
statement incorrectly listed the Debtor's name as "PTM Tecnologies,
Inc."-omitting the "h" in "Technologies." The financing statement
that was filed in the Secretary of State's office by Maxus Capital
on the same date also incorrectly listed the Debtor's name by
omitting the "h" in "Technologies."

The North Carolina Secretary of State maintains a website that
may be accessed over the internet. One of the services available
on that website is "UCC Research" that enables users to search the
UCC financing statements that are on record with the Secretary of
State. Navigating to the page of the website at which UCC searches
may be conducted involves clicking on an entry on the opening page
of the website entitled "UCC Records." That takes a user to a page

on the website that lists the UCC "Business Services" available on the website. One of the business services listed is "UCC Research." By clicking on "UCC Research" a user accesses the website page on which research regarding UCC financing statements may be conducted. Two types of searches are available on the research page, namely, the "Standard RA9" search and the "Non-Standard RA9" search. When the research page is accessed, the Standard RA9 search is selected automatically. A standard search is then available by inserting the name of the organization in question and clicking on the word "Search." In order to conduct a non-standard search, it is necessary to click on "Non-Standard RA9."

The parties agree that a search of the Secretary of State's records under the Debtor's correct name, using the "Standard RA9" search, does not reveal the GE Capital or the Maxus Capital financing statement. The parties also agree that a search of the Secretary of State's records under the Debtor's correct name, using the "sounds yeplike" feature[1] of the "Non-Standard RA9" search does reveal the financing statements filed by GE Capital and Maxus Capital.

ANALYSIS

In 2001, North Carolina adopted Revised Article 9 [RA9] of the

---

[1]When a user clicks on the Non-Standard search, the next step is to chose one of fives types of searches, namely, "Starting with," "Sounds Like," "All words," "Exact Match" and "Any Words".

Uniform Commercial Code, which included UCC sections 9-503 and 9-506(b) and (c). Under N.C. Gen. Stat. § 25-9-503, if the debtor is a registered organization, a financing statement sufficiently provides the debtor's name only if it lists the debtor's correct name as indicated on the public record. It is undisputed that the GE Capital and Maxus Capital financing statements do not sufficiently provide the debtor's name under this section because they misspell the Debtor's name and thus do not list the Debtor's name as it is shown in the public record in the Secretary of State's office.

N.C. Gen. Stat. § 25-9-506(a) provides that "[a] financing statement substantially satisfying the requirements of this Part is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading." Generally, "a financing statement that fails sufficiently to provide the name of the debtor in accordance with G.S. 25-9-503(a) is seriously misleading." N.C. Gen. Stat. § 25-9-506(b). However, N.C. Gen. Stat. § 25-9-506(c) provides a safe harbor for certain financing statements that fail to use the debtor's correct name. "If a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose a financing statement that fails sufficiently to provide the name of the debtor in accordance with G.S. 25-9-503(a), the name provided does not make

the financing statement seriously misleading."

The issue in this proceeding is whether the GE Capital and Maxus Capital financing statements fall within the safe harbor provided under N.C. Gen. Stat. § 25-9-506(c). Based upon the undisputed facts presented, the court concludes that the financing statements do not fall within the safe harbor provided by section 25-9-506(c) and that the Plaintiff's Motion should be granted and the Defendants' Cross-Motions denied.

The 2001 amendments were designed to eliminate the inconsistency that had developed in the court decisions regarding whether an error in the debtor's name made a financing statement seriously misleading.[2] The amendments in Revised Article 9 eliminate such inconsistency by creating a clear delineation for determining when an incorrect name makes a financing statement seriously misleading. If the debtor's name is incorrect, then the financing statement is seriously misleading, unless a search using the filing office's standard search logic, if any, would nevertheless reveal the defective financing statement.

N.C. Gen. Stat. § 25-9-526 gave the Secretary of State

---

[2]Compare In re Southern Supply Co. of Greenville, 405 F. Supp. 20, 23 (E.D.N.C. 1975) (holding that an error in the debtor's name was a minor error, and thus a financing statement was not seriously misleading, under the previous version of the U.C.C.), with Hinson v. Centura Bank (In re Seventeen South Garment Co.), 145 B.R. 511, 514 (Bankr. E.D.N.C. 1992) (holding that an error in the debtor's name was not a minor error under the previous version of the UCC, and therefore the financing statement was seriously misleading).

authority to "adopt and publish rules to implement the Secretary of State's responsibilities" under sections 25-9-503 and 25-9-506. Pursuant to this authority, the Secretary of State has adopted rules dealing with UCC searches that are found in Title 18 of the North Carolina Administrative Code and which may be accessed on the UCC search page of the Secretary of State's website by clicking on "Administrative Rules."  These rules include 18 N.C.A.C. 05B .0503 which is entitled "Rules Applied to Search Requests," and which provides:

> Search results shall be produced by the application of standardized search logic to the name presented to the filing officer. Human judgment shall not play a role in determining the results of the search. The following rules shall apply to searches:
>
> (1) There shall be no limit to the number of matches that may be returned in response to the search criteria.
>
> (2) No distinction shall be made between upper and lower case letters.
>
> (3) Punctuation marks and accents shall be disregarded.
>
> (4) Words and abbreviations at the end of a name that indicate the existence or nature of an organization as set forth in the "Ending Noise Words" list as promulgated and adopted by IACA shall be disregarded. This list may be viewed or obtained by contacting the UCC Section.
>
> (5) The word "the" at the beginning of the search criteria shall be disregarded.
>
> (6) For first and middle names of individuals, initials shall be treated as the logical

equivalent of all names that begin with such
initials, and first name and no middle name or
initial shall be equated with all middle names
and initials. For example, a search request
for "John A. Smith" shall cause the search to
retrieve all filings against all individual
debtors with "John" or the initial "J" as the
first name, "Smith" as the last name, and with
the initial "A" or any name beginning with "A"
in the middle name field. If the search
request were for "John Smith" (first and last
names with no designation in the middle name
field), the search shall retrieve all filings
against individual debtors with "John" or the
initial "J" as the first name, "Smith" as the
last name and with any name or initial or no
name or initial in the middle name field.

(7) After using the preceding paragraphs of
this Rule to modify the name to be searched,
the search shall reveal only names of debtors
that are contained in unlapsed financing
statements and, exactly match the name
requested, as modified.

Under this regulation, the seven rules stated therein
constitute the "standardized search logic" that "shall" be applied
to searches performed by the Secretary of State. As such, these
rules describe the standard search logic employed in the North
Carolina Secretary of State's office and hence constitute "the
filing office's standard search logic" for purposes of N.C. Gen.
Stat. § 25-9-506(c). This means that if a search using these seven
rules would reveal the defective GE Capital and Maxus Capital
financing statements, then they would be saved by the safe harbor
provision of section 25-9-506(c); conversely, if such a search
would not reveal the financing statements, then the financing
statements are seriously misleading as a matter of law under N.C.

- 8 -

Gen. Stat. § 25-9-506(b).

Rule 05B.0503 essentially creates a two-step process for applying the seven enumerated rules to the filing records. 18 N.C.A.C. 05B.0503. First, rules (1) through (6) are applied to ensure there is no limit on the number of matches returned and to expand the possible search results by treating the debtor's precise name more leniently.  These rules expand the possible results by removing any distinction based on capitalization, disregarding punctuation marks, disregarding noise words such as "Company" at the end of the debtor's name, removing the word "the" from the beginning of a debtor's name, and modifying the debtor's name to account for initials if the debtor is an individual. Second, after applying the above rules to modify the debtor's name "the search shall reveal only names of debtors that are contained in unlapsed financing statements and, <u>exactly</u> <u>match</u> <u>the</u> <u>name</u> <u>requested</u>, <u>as</u> <u>modified</u>." (Emphasis supplied).  Under this search logic, the GE Capital and Maxus Capital financing statements clearly would not be disclosed in a search under the Debtor's correct name.  A search using this search logic would modify the name to reveal a financing statement with incorrect capitalization, such as "ptm technologies, inc." It would disregard punctuation, and thus reveal a financing statement with no punctuation or different punctuation.  It would remove ending noise words, and thus reveal a financing statement under the name "PTM Technologies." However, none of the rules

- 9 -

defining the standard search logic would modify the debtor's name
to correct for the missing "h" in the debtor's name. Thus, a search
of the filing office's records under the debtor's correct name,
using the foregoing standard search logic, would not reveal the
defective financing statements filed by GE Capital and Maxus
Capital, since after modifying the name accordingly, the name in
the defective financing statements would not "exactly match the
name requested."  It follows, therefore, that the safe harbor of
N.C. Gen. Stat. § 25-9-506(c) is not available to GE Capital and
Maxus Capital.

The same result flows from the results that occur when a
"Standard RA9" search is conducted under the correct name of PTM
Technologies, Inc.  The designation of the "Standard RA9" search
alternative as "Standard" sufficiently identifies that search
alternative as the one employing the standard search logic
described in Rule 05B.0503 and adopted as such by the Secretary of
State.  A "Standard RA9" search thus also dictates a decision in
favor of the Plaintiff since the parties agree that a "Standard
RA9" search at the Secretary of State's website does not reveal the
defective financing statements. The parties also agree that a "Non-
Standard RA9" search using the "sounds like" feature will reveal
the financing statements.  Given these results, in order for the
Defendants to prevail on the merits, they would have to establish
that the "Non-Standard RA9" search utilizes the "standard" search

logic, while the "Standard RA9" search does not, a proposition that is illogical and contrary to the undisputed facts before the court.

CONCLUSION

Since the safe harbor of N.C. Gen. Stat. § 25-9-506(c) does not apply, the GE Capital and Maxus Capital financing statements are seriously misleading as a matter of law, pursuant to N.C. Gen. Stat. § 25-9-506(b), and therefore are insufficient to perfect the security interests claimed by GE Capital and Maxus Capital. The Plaintiff's Motion therefore should be granted and the Defendants' Cross-Motions denied. A separate order so providing is being entered pursuant to Rule 9021 of the Federal Rules of Bankruptcy Procedure.

This 30th day of June, 2011.

WILLIAM L. STOCKS
United States Bankruptcy Judge

PARTIES IN INTEREST


Charles M. Ivey, III, Esq.
P.O. Box 3324
Greensboro, NC 27402


James C. Lanik, Esq.
P.O. Box 1550
High Point, NC 27261


Rebecca A. Leigh, Esq.
301 S. Greene Street
Suite 201
Greensboro, NC 27401